IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BALTIMORE SPORTS & SOCIAL CLUB, INC. | * | |
| v. | * | Civil No. 16-cv-02953-JFM |
| SPORT & SOCIAL, LLC<br>&<br>GIOVANNI MARCANTONI | * | |

******

## MEMORANDUM

Defendant Sport & Social, LLC ("Sport & Social") brings a counterclaim against plaintiff Baltimore Sports & Social Club, Inc. ("BSSC"), seeking a declaratory judgment of non-infringement, and further alleging tortious interference with prospective advantage, defamation, unfair or deceptive trade practices, false advertising, and unfair competition. (ECF No. 14). Now pending is BSSC's motion to dismiss Sport & Social's counterclaim. (ECF No. 23). The motion is fully briefed, and no oral argument is necessary. *See* Local Rule 105.6. For the reasons set forth below, the motion is granted.

## BACKGROUND

At the motion to dismiss stage, this court accepts as true the facts alleged in the complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). Plaintiff Baltimore Sports & Social Club, Inc. ("BSSC") is a "corporation organized and existing under the laws of the State of Maryland with its principal place of business located at 2900 Normandy Drive, Ellicott City, Maryland, 21043." (ECF No. 31, ¶ 1). Defendant Sport & Social, LLC ("Sport & Social") is a "limited liability company organized and existing under the laws of the State of

Delaware, with a principal place of business in Baltimore, Maryland, at 101 W. Dickman St., Suite 300, Baltimore, Maryland, 21230." *Id.* at ¶ 2.  Richard Michael Cray ("Cray") is the owner of plaintiff BSSC (ECF No. 14, ¶ 9), and co-defendant Giovanni Marcantoni ("Marcantoni") operates defendant Sport & Social, (ECF No. 31, at ¶ 3).

Both companies' primary business is the "solicitation and subscription of individuals as members who play sports on teams" the companies organize. (ECF No. 31, ¶ 9; ECF No. 25, p. 1).  On August 23, 2016, BSSC filed its original complaint in this court alleging various claims of trademark infringement and unfair competition against Sport & Social and Marcantoni. (ECF No. 1).  On September 14, 2016, Sport & Social filed a response and a counterclaim seeking a declaratory judgment of non-infringement (Count I), and further alleging: tortious interference with prospective advantage (Count II); defamation (Count III); unfair or deceptive trade practices (Count IV); false advertising (Count V); and unfair competition (Count VI). (ECF No. 14, ¶ 8).

Specifically, Sport & Social alleges in or about February 2016, Cray and BSSC "began contacting known and prospective customers of Sport & Social with the intention of causing those customers to cease dealing with Sport & Social and to commence dealing with BSSC." *Id.* at ¶ 10. Further, Sport & Social alleges Cray and BSSC began telling "current and prospective customers of [Sport & Social that it] is an 'imitation' social league." *Id.* at ¶ 11.  This pattern continued at the Sport and Social Industry Association ("SSIA") conference, held on February 17, 2016, which both BSSC and Sport & Social attended. *Id.* at ¶¶ 12-15.  Sport & Social alleges that at the SSIA conference, Cray wore a t-shirt at with the phrases: "BSSC, It's the Real Thing," and "DON'T BE FOOLED BY IMITATION*Socials*." *Id.* at ¶ 16.  Sport & Social contends the phrase "IMITATION*Socials*" is in the "same font and style" as Sport & Social's logo which contains the phrase "BALTIMORE*Social*." *Id.* at ¶¶ 17-19.  Sport & Social also alleges BSSC

2

employees attended an event at Camden Yards on April 4, 2016, for opening day of the Baltimore Orioles' 2016 season. *Id.* at ¶ 23.  At this opening day event, BSSC displayed a banner containing the phrase "DON'T BE FOOLED BY IMITATION*Socials*." *Id.*  Again, Sport & Social contends the phrase "IMITATION*Socials*" was the in the "same font and style" as its logo.  Sport & Social further contends a picture of this banner was prominently displayed on BSSC's "Facebook" page. *Id.* at ¶ 25.

Additionally, Sport & Social alleges BSSC interfered with its "business operations, customers, and leagues." *Id.* at ¶ 26.  For example, Sport & Social suggests "[o]n separate occasions throughout the summer of 2016," BSSC "occupied" fields at Patterson Park where Sport & Social had planned sporting events for its customers. *Id.* at ¶¶ 27-32.  Sport & Social claims when its employees approached BSSC employees during these disruptions, the BSSC employees were "hostile and rude" and "refused to leave the fields, causing disruption and delay to Sport & Social's planned events." *Id.* at ¶ 30.  According to Sport & Social, this disruption and delay, which Sport & Social alleges is only one example of such actions, "negatively impacted [it] and its customers." *Id.* at 31.

On October 3, 2016, BSSC filed a motion to dismiss the following counts for failure to state a claim upon which relief can be granted: tortious interference with prospective advantage (Count II); defamation (Count III); unfair or deceptive trade practices (Count IV); false advertising (Count V); and unfair competition (Count VI). (ECF No. 23).

**STANDARD**

BSSC has filed a motion to dismiss Counts II-VI in Sport & Social's counterclaim under Rule 12(b)(6).  To adequately state a claim under Rule 12(b)(6), a complaint, relying on only well-pled factual allegations, must state at least a "plausible claim for relief." *Ashcroft v. Iqbal*,

556 U.S. 662, 679 (2009). The "mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). In order to determine whether Sport & Social's counterclaim has crossed "the line from conceivable to plausible," the court must employ a "context-specific inquiry," drawing on the court's "experience and common sense." *Iqbal*, 556 U.S. at 680. When performing this inquiry, the court accepts "all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The court need not, however, accept unsupported legal allegations, *Revene v. Charles Cnty. Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), nor must it agree with legal conclusions couched as factual allegations, *Iqbal,* 556 U.S. at 678, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009).

## ANALYSIS

BSSC moves to dismiss Counts II-VI in Sport & Social's counterclaim for failure to state a claim upon which relief can be granted. I assess BSSC's arguments in this order: defamation (Count III); tortious interference with prospective advantage (Count II); unfair or deceptive trade practices (Count IV); false advertising (Count V); and unfair competition (Count VI).

### I.   **Count III: Defamation**

Sport & Social alleges BSSC made false and defamatory statements when it used t-shirts, banners, and statements, suggesting Sport & Social is an "imitation" social league. (ECF No. 14, ¶¶ 48-54). Under Maryland law, "a defamatory statement is one which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from

having a good opinion of, or from associating or dealing with, that person." *Gomer v. Home Depot U.S.A., Inc.*, No. CV GLR-16-356, 2016 WL 5791226, at *6 (D. Md. Oct. 4, 2016) (citing *Batson v. Shiflett*, 602 A.2d 1191, 1210 (Md. 1992) (citation omitted)).  To sustain a defamation claim, Sport & Social must demonstrate four elements: "(1) the defendant made a defamatory communication to a third person; (2) that the statement was false; (3) that the defendant was at fault in communicating the statement; and (4) that the plaintiff suffered harm." *Id.* (citing *Ziemkiewicz v. R+L Carriers, Inc.*, 996 F. Supp. 2d 378, 393 (D. Md. 2014) (quoting *Samuels v. Tschechtelin*, 763 A.2d 209, 241-42 (Md. Ct. Spec. App. 2000))).

 Even if Sport & Social can demonstrate these four elements, however, the "application of the state law of defamation" is limited, as the Supreme Court and Fourth Circuit have expounded, by the First Amendment to the Constitution of the United States. *CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 293 (4th Cir. 2008) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 14 (1990)).  Specifically, "statements that cannot reasonably be interpreted as stating actual facts" are protected. *Id.* (citing *Milkovich*, 497 U.S. at 20).  To be considered as a "statement[] that cannot reasonably be interpreted as stating actual facts," the statement must either involve: (1) "matters of public concern, or (2) "rhetorical statements employing 'loose, figurative, or hyperbolic language.'" *Snyder v. Phelps*, 580 F.3d 206, 220 (4th Cir. 2009), aff'd, 562 U.S. 443 (2011) (citing *Milkovich*, 497 U.S. at 20-21).  The reason these "rhetorical statements" are accorded protection is because "[t]he general tenor of rhetorical speech, as well as the use of 'loose, figurative, or hyperbolic language' sufficiently negates any impression that the speaker is asserting actual facts." *Id.* (citing *Milkovich*, 497 U.S. at 21); *see also Letter Carriers v. Austin,* 418 U.S. 264, 284–86 (1974) (concluding that reference to worker who crossed picket line as "traitor" was not actionable).  Furthermore, the determination of

"[w]hether a statement can reasonably be interpreted as stating facts about an individual—whether it is rhetorical hyperbole, for example—is a question of law." *CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 293–94 (4th Cir. 2008); *see also Hatfill v. New York Times Co.*, 416 F.3d 320, 330 (4th Cir.2005) ("The question whether a statement is capable of having a defamatory meaning is a question of law to be decided by the court.").

      Here, BSSC's primary argument is its references to Sport & Social as an "imitation" cannot be defamatory because the term "imitation" is a "rhetorical statement" that lacks precision and cannot be "proven as a true or false statement of fact." (ECF No. 23, p. 4). To support its argument, BSSC cites to cases from various jurisdictions where courts held terms like "scam," "rip-off," "traitor," "fraud," and "scandal," "lack[ed] precision" and therefore could not "be proven as a true or false statement of fact." *Id.* However, none of the cited cases are entirely on point; indeed, the inquiry is a highly contextual one. *See Snyder*, 580 F.3d at 219 (citing *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 183 (4th Cir. 1998)) (highlighting that a court is "obliged to assess how an objective, reasonable reader would understand a challenged statement by focusing on the plain language of the statement and the context and general tenor of its message."). The emphasis of the inquiry should be, as the Fourth Circuit has clarified, on the "verifiability of the statement," because "a statement not subject to objective verification is not likely to assert actual facts." *Id.* For example, in *Phantom Touring v. Affiliated Publications*, the First Circuit considered a theater critic's statement that a musical comedy version of "The Phantom of the Opera" was "a rip-off, a fraud, a scandal, a snake-oil job." 953 F.2d 724, 728 (1st Cir. 1992). There, the court found the language was not only "figurative and hyperbolic," but the court could "imagine no objective evidence to disprove [the statements]." *Id.* Contrastingly, in *Biro v. Conde Nast*, the court examined a statement describing plaintiff as a "classic con man,"

and that "after a while you catch [plaintiff] in different lies and you realize that the guy is a phony." 883 F. Supp. 2d 441, 461 (S.D.N.Y. 2012). There, the court rejected the notion the statement was merely a subjective opinion regarding the plaintiff, and instead found the statements suggested the "opinions [we]re based upon additional facts beyond the stated [ones.]" *Id.* at 462. Accordingly, the *Biro* court held that the defamation claim based on those statements could not be dismissed because, "in [] context . . . the statement is reasonably capable of a defamatory meaning." *Id.*

Here, Sport & Social argues "imitation" is indeed capable of supporting a defamation action. To support its argument, Sport & Social cites*, inter alia*, Miriam Webster's definition of "imitation": "(1) the act or instance of imitating. (2) something produced as a copy, a counterfeit." (ECF No. 25, p 4-5). Sport & Social argues, given this definition, "imitation" is "shorthand for a counterfeit, something that is created fraudulently to deceive." *Id.* at 5. I disagree with Sport & Social's conclusion. Specifically, even if "imitation" is shorthand for "counterfeit," I find that, in this context, this is precisely the type of "loose, figurative, or hyperbolic" language protected by the First Amendment. I come to this conclusion because, like the court in *Phantom Touring*, I can "imagine no objective evidence to disprove [the statement]" that Sport & Social is, in fact, an "imitation" of BSSC.[1] *Phantom Touring*, 953 F.2d at 728. Although Sport & Social may find the statement "annoying, offensive, or embarrassing," this does not rise to the level of defamation. *See, e.g.*, *Bellezza v. Greater Havre De Grace Yacht Club, Inc.*, No. 0367 SEPT.TERM 2014, 2015 WL 6394418, at *8 (Md. Ct. Spec. App. Oct. 22,

---

[1] Even if evidence during discovery reveals both companies run substantially similar businesses—indeed, they are direct competitors—this would not *prove* the statement that Sport & Social is an "imitation" of BSSC. Perhaps, in another context, "imitation" can be capable of precise definition, but in this context I conclude it is a subjective term that cannot be proved or disproved.

2015), cert. denied sub nom. *Bellezza v. Greater Havre de Grace Yacht Club*, 446 Md. 291, 132 A.3d 194 (2016) ("Indeed, a statement does not rise to the level of defamation 'simply because the subject of the publication finds the publication annoying, offensive, or embarrassing.'")..

Indeed, because the emphasis of the inquiry must be on the "verifiability of the statement," *Snyder*, 580 F.3d at 219, and because I find "imitation" is not "subject to objective verification," I find the statement cannot support a defamation claim. Accordingly, I dismiss Count III of Sport & Social's counterclaim.

## II.   Count II: Tortious Interference with Prospective Advantage

Sport & Social alleges tortious interference with prospective advantage against BSSC based on, *inter alia*, BSSC's decision to tell current and prospective customers Sport & Social is an "imitation" social league, Cray's t-shirt suggesting Sport & Social is an "imitation" social league, and BSSC's refusal to leave Sport & Social's events at Patterson Park. (ECF No. 14, ¶¶ 38-47).

To state a claim for tortious interference with business relationships, a plaintiff must allege "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297, 314 (Md. Ct. Spec. App. 1995). "Plaintiffs often improperly plead the first element . . . because it must be conduct 'that is independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships.'" *Capital Meats, Inc. v. Meat Shoppe*, LLC, No. CIV. JFM-15-212, 2015 WL 4249166, at *9 (D. Md. July 9, 2015) (citing *Kramer v. Mayor and City Council of Baltimore*, 723 A.2d 529, 540 (Md. Ct. Spec. App. 1999)). Sufficiently "wrongful or unlawful

acts" include common law torts and "violence or intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith." *Alexander & Alexander Inc. v. B. Dixon Evander & Assocs.*, Inc., 650 A.2d 260, 271 (Md. 1994) (quoting *K & K Management v. Lee*, 557 A.2d 965, 979 (Md. 1989)) (emphasis added).

Sport & Social essentially argues it has sufficiently pled the first requirement because it "has already properly alleged [the] common law tort of defamation and has [therefore] sufficiently pled tortious interference." (ECF No. 25, p. 7). But as discussed *supra*, Sport & Social has not sufficiently pled the common law tort of defamation. Beyond relying on its defamation claim as the "independently wrongful or unlawful" act, Sport & Social has alleged no other act that meets this requirement. Construing all alleged facts in Sport & Social's favor, I find Sport & Social has failed to sufficiently plead a tortious interference claim. Accordingly, I dismiss Count II of Sport & Social's counterclaim.

### III.   Count IV: Unfair or Deceptive Trade Practices

Sport & Social alleges "[b]y falsely representing that [Sport & Social] is an 'imitation' social league, BSSC has committed unfair and deceptive trade practices in violation of § 13-301 of the Maryland Consumer Protection Act." (ECF No. 14, ¶ 59). BSSC argues, however, that only a consumer has standing to bring a claim under § 13-301 of the Maryland Consumer Protection Act. (ECF No. 23, p. 6). BSSC's view is correct. *See Fare Deals Ltd. v. World Choice Travel.Com, Inc.*, 180 F. Supp. 2d 678, 692 (D. Md. 2001) ("Such causes of action, however, are limited to 'consumers' purchasing 'consumer' goods or services."). Sport & Social concedes this point, admitting that "as a non-consumer, it lacks standing to bring Count IV under Maryland Commercial Law § 13-301." (ECF No. 25, p. 7). Accordingly, I dismiss Count IV.

### IV. Count V: False Advertising

Sport & Social next alleges BSSC falsely advertised under the Lanham Act, 15 U.S.C. § 1125(a)(1), when it represented Sport & Social is an "imitation" social league "on at least t-shirts, a banner promoting its business, and its Facebook page, which are commercial advertisements in interstate commerce." (ECF No. 14, ¶¶ 60-64). To state a claim for false advertising under the Lanham Act, Sport & Social must establish that:

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 948 F. Supp. 2d 538, 552 (D. Md. 2013) (citing *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 120 (4th Cir. 2011)). "For liability to arise under the false advertising provision, 'the contested statement or representation must be either false on its face or, although literally true, likely to mislead and to confuse consumers given the merchandising context.'" *Id.* at 553 (citing *C.B. Fleet Co. v. SmithKline Beecham Consumer Healthcare, L.P.*, 131 F.3d 430, 434 (4th Cir. 1997)). Importantly, "[s]tatements of opinion are generally not actionable under § 43(a) of the Lanham Act." *Id.*; *see also Osmose, Inc. v. Viance, LLC,* 612 F.3d 1298, 1311 (11th Cir. 2010). And, for "a statement to be actionable, it must be a 'specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact.'" *Id.* (citing *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.,* 173 F.3d 725, 731 (9th Cir. 1999)).

Here, BSSC argues "imitation" is not a statement that "can be proven true or false." (ECF No. 23, p. 7). Sport & Social counters that "imitation" can be proven "objectively true or false:

10

either Sport & Social mimics BSSC, or it does not." (ECF No. 25, p. 9). To support its argument, Sport & Social refers to *EndoSurg Med., Inc. v. EndoMaster Med., Inc.*, where this court considered a false advertising claim in a situation where a defendant told a plaintiff's customers that plaintiff's business was "unstable." 71 F. Supp. 3d 525, 554-55 (D. Md. 2014). The *EndoSurg* case, however, undercuts Sport & Social's argument. In *EndoSurg*, this court held that "unstable" is not a "general and subjective term," but rather "the stability of a company can be verified through empirical data." *Id.* at 554. In comparison, I find "imitation" cannot "be *verified* through empirical data," or by other means. *Id.* (emphasis added). Construing the facts in Sport & Social's favor, Sport & Social has failed to plead false advertising under the Lanham Act because "imitation" is not a "specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Metro. Reg'l Info. Sys*, 948 F. Supp. 2d at 553. Accordingly, I dismiss Count V of Sport & Social's counterclaim.

    **V.**    **Count VI: Unfair Competition**

Sport & Social's final allegation is that BSSC used, on its t-shirts, banners, and Facebook page, a "mark in commerce similar to the [Sport & Social] logo without the consent of Sport & Social in a manner that is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of BSSC with Sport & Social, or as to the origin, sponsorship, or approval of BSSC's goods and services or commercial activities with those of Sport & Social." (ECF No. 14, ¶¶ 65-69). This allegation is based on BSSC's use of "IMITATION*Socials*" in its marketing efforts, which Sport & Social alleges is in the "same font and style" as Sport & Social's logo, which contains the phrase "BALTIMORE*Social*." *Id.* at. ¶¶ 17-19). To allege a claim of unfair competition under the Lanham Act, Sport & Social must establish:

11

>(1) that it possesses a mark; (2) that the defendant used the mark; (3) that the defendant's use of the mark occurred 'in commerce'; (4) that the defendant used the mark 'in connection with the sale, offering for sale, distribution, or advertising' of goods or services; and (5) that the defendant used the mark in a manner likely to confuse consumers.

*Potomac Conference Corp. of Seventh-day Adventists v. Takoma Acad. Alumni Ass'n, Inc.*, 2 F. Supp. 3d 758, 768 (D. Md. 2014) (citing *People for the Ethical Treatment of Animals v. Doughney,* 263 F.3d 359, 364 (4th Cir. 2001)). Although the fifth element "is a factual issue dependent on the circumstances of each case and is ill-suited on a motion to dismiss," "a conclusory and 'formulaic recitation' of the elements of a[n unfair competition] cause of action is insufficient to survive a motion to dismiss." *Potomac Conference Corp.*, 2 F. Supp. 3d at 768 (citing *Petro Stopping Ctrs., L.P. v. James River Petroleum, Inc.,* 130 F.3d 88, 92 (4th Cir. 1997) and *Hensley Mfg. v. ProPride, Inc.,* 579 F.3d 603, 609 & n.3 (6th Cir. 2009)).

BSSC focuses on the fifth requirement, suggesting "[t]he test for unfair competition is likelihood of consumer confusion, similar to that for trademark infringement." (ECF No. 23, p. 9) (citing *Putt-Putt, LLC v. 416 Constant Friendship, LLC*, 936 F. Supp. 2d 648, 659 (D. Md. 2013)). BSSC contends there is "no likelihood of confusion" because "the whole point of the statement is to draw a distinction between the two entities – BSSC is 'the real thing' and Defendant is something else." (ECF No. 23, p. 9). Although the fifth element is generally a factual issue ill-suited for a motion to dismiss, *Potomac Conference Corp.*, 2 F. Supp. 3d at 768, I agree with BSSC.

To support its argument, Sport & Social again cites to *EndoSurg Med., Inc. v. EndoMaster Med., Inc.*, and again, this reference undermines its argument. 71 F. Supp. 3d 525, 551 (D. Md. 2014). In *EndoSurg*, this court stressed "[e]vidence of actual confusion is 'often paramount' in the likelihood of confusion analysis." *Id.* (citing *Lyons P'ship, L.P. v. Morris*

*Costumes, Inc.*, 243 F.3d 789, 804 (4th Cir. 2001)). There, the plaintiff alleged that "some of [its] clients and venders, and EndoSurg's accountant, have reported actual confusion about the affiliation between Defendants' EndoMaster and Plaintiffs' EndoSurg and EndoCure." *Id.* The *EndoSurg* court reiterated that although "a conclusory recitation of the legal elements would not survive a motion to dismiss a claim for unfair competition under the Lanham Act," the plaintiff had made actual allegations of confusion, and therefore sufficiently pled a viable claim for unfair competition. *Id.* at 553. In comparison, Sport & Social has done little else other than provide a "formulaic recitation of the elements," *id.*, by alleging BSSC used its mark "in a manner that is likely to cause confusion, to cause mistake, or to deceive," (ECF No. 14, ¶¶ 65-69).[2] Beyond Sport & Social's failure to plead the fifth element with any degree of particularity, it misses the fact that, as BSSC clarifies, "the whole point of the statement is to draw a distinction between the two entities," rather than propagate confusion. (ECF No. 23, p. 9). Accordingly, I dismiss Count VI of Sport & Social's counterclaim.

  1/6/17     /s/  
Date                                                        J. Frederick Motz
                                                                       United States District Judge

---

[2] For the sake of comparison, BSSC's complaint alleges various instances of "[a]ctual [c]onfusion" including, *inter alia*, players thought they were playing in BSSC leagues when they were playing in Sport & Social leagues, and receipt of email inquiries from Sport & Social players regarding scheduling for soccer, a sport not offered by BSSC. (ECF No. 8).